3-18-05-24 Trudy Zoepfel-Thuline, appellant by Don Thuline v. Black Hawk College of Appalachia by Allison Wright  May it please the Court, Counselors, I'm Don Thuline, I represent the plaintiff in this case, Trudy Zoepfel-Thuline, and good morning, Your Honors. And this case is comprised of two combined complaints from the Rock Island County Circuit Court made pursuant to the Illinois Human Rights Act for damages for retaliation by the defendant, Black Hawk College. The plaintiff's a former employer. The plaintiff was a GED instructor for many years at the defendant's facility in Kiwani. The two counts are different. Count one is a count for retaliation against the plaintiff for reporting or complaining or opposing, the language sometimes is, conduct which she reasonably believed to violate the law during the years 2009 and 2010. For complaining multiple times from September of 2009 until August of 2010, that pornography was found in her immediate supervisor's desk door. Count two is for retaliation against the plaintiff for filing a charge with the Illinois Department of Human Rights in January of 2011 about the matters contained in count one, in other words, the 2009-2010 period. It's important, I feel, to stress that the suits are not claims themselves for sexual harassment but for retaliation. Count one is a suit for damages for retaliation for not being allowed to teach or work from August of 2010 until October of 2010 and losing income as a result of that. Count two, on the other hand, is a suit for damages for permanent termination in June of 2011 and for emotional injury because plaintiff believes that the defendant retaliated against her for filing a charge in January of 2011 as a result of those matters contained in count one. What was the retaliation activity for the first one? Not allowing the plaintiff to teach from August 2010 until October 2010, a little more than half of the semester. It was filed as an AR complaint and it was filed first because it comes out of the process through the Illinois Department of Human Rights. It was a complaint again for the same substance, right? Beg your pardon? What was the action taken by the defendant? You said the action taken was to not allow the teaching during those months. Right. Okay, but what was it in retaliation for? For reporting the existence of pornography in the desk of her immediate supervisor. And so that's the basis of the retaliation for that activity by the plaintiff in both counts? Correct. Okay. As the court said, both counts are rooted in that particular activity. Okay. But they are different because the second count is for retaliation for filing a charge which she filed because she couldn't work. But then a few months after filing the charge, she was permanently terminated. The facts, as I said, they cover a two-year period of time. And I have detailed them chronologically in the Statement of Facts because it is difficult to keep tracking these things over a two-year period. And because the cases went through and came out of the Department of Human Rights at slightly different times. But they are now combined into one complaint. She charged sexual harassment, didn't she? Pardon? She charged sexual harassment, didn't she? Yes. Well, yes, she also did a third complaint. She didn't charge there were pictures in a drawer. She charged she was sexually harassed. Well, no, the charge was for retaliation for reporting the existence of the pornography. That's correct. No, sexual harassment. Well, see, there was also a charge filed for sexual harassment, but that was withdrawn. And that's why these cases are not for sexual harassment but for retaliation for reporting. And number one, and count one, and number two, retaliation for filing a charge. And both of those come out of the specific protected activity clauses of the statute. The court, in his March 4th ruling of 2018, correctly pointed out that in order to prove a case for retaliation, to get protection against retaliation, the plaintiff must prove that she engaged in a protected activity, number one. Number two, that there was adverse employment action by the employer, number two. And number three, that there was a causal relationship between the exercising of protected activity and the adverse employment action by the employer. And the protected activity was? Which activity? The protected activity. The protected activity in count one was reporting. And in count two, it was filing a charge. The court went on to say that the plaintiff didn't meet even the first test, that is engaging in a protected activity as a matter of law, because the court felt no reasonable person would conclude that the plaintiff's actions were protected activity. So that's as far as the reasoning has gone. I think it's important to look at the concept of protected activity, which comes from the statutory provisions of the Illinois Human Rights Act and also from the Federal Civil Rights Act of 1984. The Illinois Act says it is a civil rights violation for a person or two or more persons to conspire to retaliate against a person because he or she has opposed. That means complain or oppose that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment, and employment, or because she has made a charge, filed a complaint, testified, assisted, or participated, participated is the key word, in an investigation, proceeding, or hearing under the Act. So the interesting thing about this is that the statutes in the Federal one is very similar. And I quoted those in my appellant's brief. This statute has two different clauses. The opposition clause, which opposing practices are made unlawful by statutes. In other words, complaining about them, complaining about the existence of the pornography as in the first count. And the second part, the participation clause, which is having made a charge, the name, of course, for the proceedings or the little suit within the Department of Human Rights, or testified or participated in an investigation, proceeding, or hearing. Now is that the third one? Is that what you're saying was the protective activity engaged in by the plaintiff? The second one was the protective activity, filing a charge. Okay, yeah, the second one, well, you're defining what a protective activity is. Correct. And through the Act, and there's a third one, the investigation, participating in the investigation, correct? Yes, there is an additional issue because of the language concerning participation. It's not only filing a charge, but it's participating in an investigation, and it's plaintiff's position and has been in this case that the defendant did begin to conduct an investigation and that the plaintiff participated in that by sending the pornographic materials to the EEO officer, equal employment officer, in charge of such things. And so that is also very significant because if the plaintiff would gain protection for retaliation under the participation clause by participating in an investigation, and some courts and the EEOC have held that even though a complaint may be unreasonable, that if it falls under the participation clause, the complainant is still entitled to the protection from retaliation. So how do you tie the loss of her employment with retaliation? She was a teacher who was on contract for every class that she taught, right? That's correct. She was a contract employee for many years with a multitude of short-term contracts. And I, in fact, did address that in my original resistance to the summary judgment motion. There is a case in Illinois which indicates it was under a different act. It was under the Ethics Act for state employees where someone was retaliated against for reporting something. But the court in that case held that even contract employees who have short-term contracts that begin and expire, begin and expire, begin and expire, are still entitled to the protection. And that's the plaintiff's belief in this case, too, especially after she had, as the exhibits in the plaintiff's motion for summary judgment show, continuous short-term contracts for being a GED teacher from 2003 all the way up through these years of 2009, 10, and 11 when these events happened. So that, even though they're short-term, the position is that they're still entitled to the protection against retaliation. And I've cited the Wynn case versus, I believe, the Department of Human Services in the record, too. Well, let me ask you, on a factual basis, how did your client become aware of these pornographic images? That's a very good question. The plaintiff became aware because a female co-worker on or about August 27, 2009, had been looking for vouchers for a class that she wanted to take the night before she talked to the plaintiff. And while she looked for those vouchers, she found these 27 pages of what the plaintiff believes is certainly clearly pornographic material. The next night, she called the plaintiff's attention to this, and she showed where she had found them when she was looking for the vouchers, in the immediate supervisor's desk drawer in an area that was frequented by female clerical personnel. That was the initial event. And the female co-worker who discovered it and brought it to the plaintiff's attention indicated she did not know how to report this. And the client, or the plaintiff, rather, decided to call on September 1st, the next business day, basically, or teaching day, the EEO officer at the main campus of Blackhawk in Mulaney and told her exactly what had happened. And the EEO officer told her to send the copies of the pornography to her, and that the EEO officer would take care of the matter. And at the time she discussed this on September 1st, the plaintiff indicated how upset both the co-worker and she were at finding this, or at the co-worker finding it. And she indicated that she felt that, in her mind, it amounted to sexual harassment. She said that it was very disturbing to her, and that... Well, there was another female that showed it to her, wasn't there? Yes, that's correct. That's correct. And so it was Harris, was that the supervisor's name? Who was the supervisor? Oh, David Harris was the name of the immediate supervisor. There was no other case where he was suggesting that he went out and said, Hey, look at this. He said to any female employee, look at this. Or go get it in the second drawer and see what you find there, or something like that. That is correct. And possession of pornography, as long as it's not kiddie porn, is not illegal, right? That's correct. But this is in a school situation, and I think that's... It's a college, right? Yes. But there are also minor students. So it's a college. Do they get seen pornography by their own surgeons? Well, these... The college also runs graduate equivalency degree programs, or GED classes, in which many students are minors. In fact, her afternoon class... She taught two classes, four days a week, afternoon and evening. The afternoon class was primarily high school dropouts who were court-ordered to attend these classes. That's less than two minutes. I'll rephrase my question. What percentage of high school students do you think have seen pornography by their own surgeons? I've raised some kids. Well, that is a good question, and there would be a substantial percentage. That's true. But the plaintiff's point has been throughout this. It was not just the initial discovery and reporting it, but later in the spring of 2010 and April of 2010, while another secretary from the clerical department was looking for calculators for the students, for the plaintiff to use in a class, she opened the desk for them and found the pornography to be there in April, many months later. The other thing about the pornography, it had been dated off of a computer printout in March and May of 2009, so the plaintiff was aware that the pornography had been there by the April of 2010 time for a year. The plaintiff's point is that she had to teach every day from August of 2009 to April of 2010, wondering what the EEO officers or the college had done about this. When she found in April they hadn't done anything, then she realized that she was having to teach every day,  and it was very, very disturbing, as she said, and I've said in the record, to go to that school every day knowing that that pornography is in that desk, knowing that's how the supervisor thinks of women, and that it just was simply very upsetting and it shouldn't have been there. Did she ever talk to the supervisor about it? No. Did anybody talk to the supervisor? No. She was instructed by the EEOC officer that the EEOC officer, a person named Joe Johnson, would take care of her. What the record also shows that after the initial reporting in September 1st of 2009 in October, the EEOC officer and the director of human resources, a woman named Karen Boyd, emailed each other and decided after they had made some sort of a check of computers at the campus to, quote, let it lie, end of quotes. So nothing was done by the college after that initial reporting. But to the best of your knowledge, was Mr. Harris ever told about the discovery of the pictures? We have no knowledge about that. It was still there in April. The plaintiff wrote a list of expectations, which is quoted in the brief, starting with in June of 2010, almost a year later, starting with the idea to remove the pornography from the supervisor's work area and desk, and, number two, to stop having a hostile workplace and to enforce the college's harassment policies and not to retaliate. Her attorney in August wrote the same thing, again, almost a year, very close to a year later, pointing out that the plaintiff's complaints about a hostile workplace had not been addressed and that after multiple complaints for a year, the pornography had still been there. And instead, by that time, the defendant was working on a demand, a multiple demand to have meetings over expectations, which the plaintiff, you'll find in the record, all of which the plaintiff attended. Okay. Thank you, Mr. White. Ms. Wright. Good morning. May it please the Court, my name is Allison Wright. I represent Black Hawk College in this appeal. And as you discussed some of the issues that were obviously in the appeal brief, but there's two primary arguments from defendant's perspective that are on appeal today. The first argument advanced by plaintiff as to count to is that there's no reasonableness requirement with the participation clause and that a plaintiff, she, was not required to have a reasonable good faith belief that the conduct at issue in this case was in fact sexual harassment prohibited by the Illinois Human Rights Act. The second overarching argument is that even if this reasonableness requirement did apply to the participation clause, plaintiff advances and argues that she did in fact have a reasonable good faith belief that this harboring of pornographic materials and her finding them on two separate occasions when another female employee showed them to her So I'd like to address that first argument first about whether or not the reasonableness requirement is required under both the opposition and participation clauses of the Human Rights Act. Now plaintiff attempts to parcel out count one and count two and argue that different standards should apply here. But from both a factual and a legal perspective, count one and count two are based on the same set of operative facts in this case and they do require application of the same reasonableness standard. From the inception of this case, plaintiff did in fact make a sexual harassment claim. There was a charge filed. This claim was not abandoned until after summary judgment was filed by the college in this case. And that is shown in the record here. That's why in the college's motion for summary judgment, we moved for summary judgment on a sexual harassment claim. And Judge Conway properly pointed out that she said in her deposition she was in fact bringing a claim for sexual harassment about the college. So to say that this has always been, as plaintiff does in her reply brief and on appeal now, that this has never been about sexual harassment, the facts from that sexual harassment allegation are so inextricably intertwined with these two retaliation claims that they cannot be separated out. And her abandoning those claims at summary judgment or whenever doesn't save her retaliation claims in this case. Now conduct does not become a statutorily protected activity simply because plaintiff believes or imagines that it should. As the trial court properly pointed out, protected activity doesn't apply to complaining about every subject under the sun, as plaintiff would like to argue in this case. In this situation, in order to proceed on both of her retaliation claims and to meet that first level standard at the prima facie case where she needs to prove that protected activity, she has to prove that she reasonably believed in good faith that the practice opposed violated the Human Rights Act. And she can't do that. And the trial court properly so concluded... What opposed the practice? What did you say? The practice opposed. So for both count one and count two, these two instances where she found the pornography in the desk, she needs to prove she had a reasonable good faith belief that those two instances falls within the ambit of conduct prohibited by Title VII or the Human Rights Act. Those two instances, the two conduct, those what? The two instances are in August of 2009 when another female employee said she was looking for vouchers and she invites the plaintiff in. The plaintiff sees them. The plaintiff voluntarily requests a copy. We know all that. And then the second instance... I'm just asking what they are. Oh, sorry. So just the discovery and the rediscovery is how they're frequently phrased in the materials in the record on appeal. Okay. I just wanted that clarified. Sure. So the conduct are just those two isolated instances. Now, the parties all acknowledge and agree that plaintiff doesn't have to prove the merits of a sexual harassment claim in order to proceed with her retaliation claims, but she does need to prove that her claim for sexual harassment is not baseless. So there's a difference between a meritless claim and a baseless claim, and that difference is not only recognized by the Seventh Circuit, but it's also fatal to plaintiff's claims in this case. So you're saying it's a baseless claim. Correct. Okay. And why is that? Because there's no reasonable person that could conclude that these two instances where she sees the material on her desk outside the presence of her supervisor and where there's no active conduct on behalf of her supervisor where he showed them to her, talked to her about them. Her discovery would be the answer, correct? Correct. Okay. Yes, her discovery. When her co-workers discovered it. Correct. And then she took a copy home. Second time. Correct. And I did hear plaintiffs point out that... No, another female employee had her go in and look for calculators, and she opened the desk drawer. Okay. And to clarify for the record, I did hear plaintiffs state that it is a fact in this case that his office or his desk drawer, for that matter, was a place that was frequented by female personnel, and that fact is nowhere in the record. Plaintiff conceded in her deposition that she had no job duty requirement or authorization to be in his desk when he was not present. He didn't direct her to be in there. And there's no evidence in the record, especially as to female personnel, but that anyone was especially authorized. Was there a deposition of hers? There was not. He was not deposed in this case. Okay. Now, plaintiff argued at summary judgment and the motion to reconsider, and now before you on appeal today, that you should ignore the Seventh Circuit cases and our Illinois Federal District Court cases. You should ignore Lord, Maggar, Nelson, and all the cases in between, and instead find that this EEOC example from the EEOC guidance and a Fourth Circuit court of appeals case warrants disturbing the trial court's grant of summary judgment in this case. Now, we exhaustively address the ways that this authority, so to speak, doesn't apply in this case, but I will briefly touch on it because it does show that our plaintiff doesn't argue the trial court misapplied Illinois law or Seventh Circuit law in this case. She simply prefers and suggests that you today apply a different standard from the Fourth Circuit. In doing so, she's asking you to say that there is no reasonableness requirement for the participation clause under the Human Rights Act, and that is contrary to the law of the Seventh Circuit. Okay. Let me ask you, was the plaintiff terminated or was just not renewed? Not renewed. Okay. And under the law, there's a school year reason, the college year reason not to renew? It does not. And there's any reason at all except a wrong reason? Correct. At all. And it did have a reason, and it explained that to her in June prior to it not being renewed. Which was? That's a result of low funding, low enrollment, and low attendance in her classes. Attached to our summary judgment motion is the affidavit of Glenda Nicky, who made that decision. And she specifically details what numbers she looked at, how she came to that conclusion. And there's no evidence or facts in the record to dispute the basis for that decision. And as we argued at summary judgment, even if Ms. Nicky was wrong, if the enrollment numbers were something different, there is nothing in the record to dispute that. That is what she relied on when she made that decision, and it had nothing to do with the fact that she had filed a charge with the IDHR, as alleged by plaintiff. Now, all the parties, including the trial court, all rely on Robinson, an Illinois appellate court case where the trial court says, Illinois state courts can and should rely on federal Title VII law. And in Robinson, the Court of Appeals cites numerous instances where it did repeatedly rely on federal Title VII law. And in each of those, it was a case that sits within the Seventh Circuit or a federal court sitting within Illinois. That includes Nelson and Matson. And so plaintiff, in fact, throughout summary judgment and the motion to reconsider, herself relied on Seventh Circuit law, except for the one issue, which was dispositivist, to count to for her in this case. And that's where she asked the court to kind of circuit shop with her over to the Fourth Circuit, where she relies on this Glover case. And in support of that, she says that you can sit here today and that this Wilson case that plaintiff cites, that we're not bound by the federal courts from the Seventh Circuit or the Court of Illinois. And she claims the Wilson case stands for the premise that the Illinois Supreme Court elected to apply the law of the Seventh Circuit because it agreed it was the best logic and the best reasoning, but that's not at all what happened in Wilson, and that's not the holding in Wilson. Very briefly, federal decisions, what Wilson said, the Illinois Supreme Court said, that federal decisions are considered controlling on Illinois state courts when applying a federal statute, so the statute will be given uniform application. Now, I appreciate the Illinois Human Rights Act is not a federal law, but is mirrored after Title VII. Their intents are the same, and the participation and opposition clauses are identical. So to say that you, as sitting here today, should not be giving deference and providing the same reasoning the Wilson court did, you're essentially following the federal statute when you're applying the Human Rights Act. They are mirrored off one another. You agree we're not bound by it, but we may, if it makes sense. Correct. I'm sorry? In other words, you're saying you agree we're not bound by it, we're bound only by this decision. If it's federal law, the U.S. Supreme Court, if it's state law, the Illinois Supreme Court. Other than that, we're not bound, but we may follow it if it makes sense to do so. And I would say Wilson takes it a step further. I would say that because the Illinois Human Rights Act is mirrored after Title VII, it is the equivalent of applying a federal statute in state court. So giving more deference to Illinois federal decisions in the Seventh Circuit will provide a uniform application of our civil rights laws in the state of Illinois. Which would make sense. Correct. That's the argument we advance. But in an effort to escape dismissal, you know, plaintiff is asking you to ignore— I'm sorry? Unless we wanted to broaden it. Broaden the application? It would be inconsistent with state law. States can get a lot more rights than the federal government if they so choose. The issue, as identified in Wilson, would then be that she would have different decisions based on almost identical statutes in state and federal courts within Illinois. So, if they're expansive, it's a benefit to the Illinois citizens, isn't it? It wouldn't be expansive because in this situation the purpose that they're asking you to advance is to not require reasonableness for the participation clause. And plaintiff has not argued that there is any benefit to citizens in the state of Illinois for that. In fact, we would absolutely argue the contrary of that. If there is no reasonableness standard for the participation clause, as the courts have pointed out, that arms people, individuals, with a coercive weapon against their employers. They can file frivolous and baseless claims, but if they file a charge under the Illinois Human Rights Act, what plaintiff is asking you today is say that it's automatically protected even if it's in bad faith. And even ask them to find it in bad faith. If it's not covered by Title VII or the Human Rights Act, they're saying the participation clause should have unlimited protection. And the abuse that would arise from that, we would argue, as from defendant's position, does a complete disservice for our Human Rights Act. It's not consistent with its intent. And we go through the EEOC guidance and the Fourth Circuit in our briefing as to the reasons that that does not apply. The EEOC guidance that we appreciate and acknowledge the Supreme Court has said courts can give that deference. But the interpretation that plaintiff argues is a one-sentence example about graffiti. It's not a case holding. It's not even an interpretation by the EEOC. So to rely on that and ask you to extrapolate facts and holdings from that is a stretch. And it's not based on any authority at all. And the Glover case, the issue that they rely on it for, is not actually about whether reasonableness should be a requirement for filing a charge. The Glover case is about an employee testifying in another person's charge. So it's not asking whether or not the person who testified had a reasonable belief that the conduct at issue really violated or fell within the purview of the Human Rights Act or Title VII. So the Fourth Circuit, that Glover case, has absolutely no bearing. And it is explicitly contradictory to Matson and Nelson, which are Seventh Circuit law. Now, as far as the second argument by plaintiff that she did, even if there is a reasonableness requirement, plaintiff does claim that she does meet that standard and that she did have a reasonable good faith belief that these two instances, these two discoveries, did constitute sexual harassment. So her internal reporting and filing of a charge should be protected under the Human Rights Act. And the trial court said no. And looking at the facts and the basis of the record before it, it held plaintiffs thinking in this regard that these two instances or sexual harassment were arbitrary, capricious, unreasonable, and illogical. Now, since the inception of this case, she has claimed that she had a reasonable good faith belief that seeing these documents constituted sexual harassment. And defendant has always maintained that she did not, and she actually never reported or filed a charge about conduct even prohibited by law because these two instances don't rise to that level. Now, if you look at cases that are cited in our briefing, Lord and Matson, which were both relied on by the trial court, the court in those cases also says plaintiffs not complaining about conduct that even falls within the category of conduct that is prohibited by the Human Rights Act. And the conduct there is a lot worse than what we have here. There is no evidence in the record that David Harris did anything directed at Trudy Tulin in this case. There's no evidence that he even knew she saw these documents. So to say that he put those there for some way and that she felt sexually harassed by the existence or the harboring, as the word she uses, is illogical. And it is unreasonable, as the trial court properly found. In Lord, if you look at the facts of that, both Lord and Matson include sexual physical touching, complaints about sexual physical touching. Somebody was touched on the buttocks three separate occasions, and then they were grabbed in between their legs. And when they complained about it, the Seventh Circuit said, no, we don't believe that that even falls within the category. This was joking, and it's very clear based on the record that was before it that that's not reasonable, that you even believe that would be prohibited by Title VII. And then in Matson, there's two instances of physical sexual conduct where a supervisor presses her breast into her subordinate, and then she reaches around him on another occasion, again making physical contact. He complains about that, and the court said, no, it's not reasonable for anybody to believe that. So taking those cases, those are a far cry from the facts that are before this court and that were before the trial court. This is a plaintiff who voluntarily invited injury to herself, an alleged injury at that. Would those decisions be the same today? What years were those decisions? The Lord case is 2016, and the Matson case is 2004. Okay. So, yes, we would believe that they would be the same. And so if there aren't any further questions for defendants, we have the rest of our time. Thank you. Mr. Tolleen, sir, or both. May it please the Court. It is true, counsel for the defendant talked about the reasonableness requirement. With regard to count one, there is unquestionably a reasonableness requirement that the complaining or the opposing the practice must be objectively reasonable. And that's what the plaintiff feels is also the case or the situation in this case. The defendant and the court have constantly focused on the idea that this is only a two-time event. In other words, the event in August 27th of 2009 where the first co-worker showed what she had found, and then in late April of 2010 where the other secretary, looking for calculators, opened the door and revealed the materials again. But as I pointed out, it's a matter that the presence of the pornography ran over a one-year period of time during which Was it the exact same pornography? I'm sorry, Your Honor. Was it the exact same pornography? Well, yes, because the pornography has dates on it that were automatically made when it was printed on the computer in May and March of 2009. How many pages were there? Twenty-seven. She looked at all 27 pages the second time? No, not the April time. How many did she look at the second time? She glanced at the top of the same stack that had been shown to her in August. That's correct. But at any rate, it's the idea of the one-year period of time The other thing that factors into this is that there were, by my count, in the record six complaints, six specific opposition actions taken by the plaintiff over that one-year period of time, both verbally and in writing by herself and through her attorney. And those complaints ran from September 1st up to the first part of May of 2010. Then into June of 2010, where the plaintiff made a list, and the top of the list was, June of 2010, almost a year later, the supervisor will remove the pornography from the drawer, will stop having a hostile workplace, and will not retaliate. The only way to do it is to have the employees stay out of the supervisor's drawer. I'm sorry, Your Honor, I didn't understand. She said another way to handle that problem is to stay out of the supervisor's drawer, out of his desk. Well, she did not go into the supervisor's desk. The other employee did in the first situation and brought it to her attention, and the second time another secretary did. And the plaintiff was never told, the record shows, as late as August of 2010, that the materials had been removed. In fact, the evidence as it came out in discovery was that, as I said, the college decided to, quote, let it lie, where the end of quotes were the exact words. Counsel, there's one more. Well, again, another criticism that's often made is that these are baseless claims. So you're saying, to get this maybe in a little different perspective, the discovery and the rediscovery, as it was characterized by the opposing counsel, of this pornographic material was not done directly by the plaintiff. It was secretary's? Correct. You know, it was a situation where the first coworker brought it, discovered it, then brought it to her attention the next day. The second coworker, another secretary, was looking for calculators. The plaintiff happened to be there and looked in the drawer and saw the top of the materials as it had been before. She didn't go looking for them. Would it be a stronger case? Obviously, it would be a different case if the coworker and the secretary were to bring this action. Well, of course it would. Because otherwise it's arguably derivative. The plaintiff felt that, at a minimum, it should be recorded for many, many reasons. The way the drawer was described in the briefs, there were hanging file folders. Is that correct? I believe so. And these pictures were underneath the file folders? That's correct. So in order to see them, you'd have to push back the file folders? I don't know if I can answer specifically, but I think the file folders did not cover the view, if I were to be cautiously accurate in stating it. Thank you. As I was saying, too, the plaintiff feels that these are not baseless claims and they're not about every subject under the sun. They're about pornographic material in a school situation where the material was accessible to female staff and others, including students, and were, in fact, seen by the plaintiff twice in another person. How would they be accessible to students? The record shows that many other students and students' children frequently were in this office area. Were they in his office, in his desk drawer? I don't know, but they were frequently spending time in that area, I believe the record shows, and that was one of the concerns of the plaintiff in making the reporting. Counsel's time. With regard to federal law, I believe that Illinois courts are not bound by cases of the Seventh Circuit, and I think what is important is not the circuit from which the case arises but the reasoning that's in the case, and I think where the Supreme Court has not spoken, if there is a conflict between the different federal circuits, I think the court has the choice to make the best reasoning case, and that's why we decided to go with this. All right. Thank you, and thank you both for your arguments here. Thank you. This matter will be taken under advisement. This position will be issued right now. It will be in a brief recess for a panel change before the next case.